# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THEODORE PRICE, | ) |
| Plaintiff, | ) |
| v. | ) 2:06-cv-00744-JEO |
| JEFFERSON COUNTY, ALABAMA; MIKE HALE, individually and in his official capacity as Sheriff of Jefferson County; and PAUL COSTA, individually and in his official capacity as Chief of Corrections for Jefferson County, Alabama. | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

The plaintiff in this action has filed various claims against defendants Jefferson County ("the County") and Sheriff Mike Hale ("Hale") and Chief Deputy Sheriff Paul Costa ("Costa") premised on their purported failure to provide him medical treatment at the Jefferson County Jail. The plaintiff asserts that each of the defendants violated his Eighth and Fourteenth Amendment rights, in contravention of Title 42, United States Code, Section 1983. (Complaint at ¶¶ 1, 26, 28 (Counts One & Two)).[1] The plaintiff also alleges various state law claims, including negligence (Count Three at ¶¶ 29-33), respondent superior/vicarious liability (Count Four at ¶¶ 34-36), wantonness (Count Five at ¶¶ 37-39), and outrage (Count Six at ¶¶ 40-43). A subsequently filed amended complaint additionally attempts to sue defendants Hale and Costa in their individual capacities. The plaintiff seeks monetary damages and other "further relief as this Honorable Court deems just, proper and necessary in the interest of justice." (Complaint at p. 8).

---

[1] The complaint is located at document 1 and the amended complaint is located at document 10. The documents are identical with the exception of the insertion of "individually" after defendant Hale and defendant Costa in the style of the case.

Sheriff Hale and Chief Costa filed their first motion to dismiss this action asserting that the complaint was due to be dismissed because they had been sued in their official capacities and those claims were barred by the Eleventh Amendment to the United States Constitution. (Doc. 6). The plaintiff then filed an amended complaint adding "individually" after Hale and Costa's names in the style of the case. (Doc. 10). Hale and Costa then filed an amended motion to dismiss asserting that (1) the plaintiff's amended complaint is virtually identical to the original complaint, which is insufficient to state a claim against them in their individual capacities; (2) the claims against Hale and Costa in their individual capacities are barred by the two year statute of limitations; and, (3) due to the fact that the amended complaint only states claims against Hale and Costa in their official capacities, those claims are barred by Eleventh Amendment immunity. (Doc. 12).

The County also filed a motion to dismiss this action asserting that the plaintiff's claims against it are due to be dismissed under the holding in *Turquitt v. Jefferson County*, 137 F.3d 1285 (11th Cir. 1998). (Doc. 8). The plaintiff simply responded that he "has not had time to conduct any discovery to substantiate the allegations of his Complaint." (Doc. 11). The court held a hearing on these motions on July 18, 2006, wherein the parties were afforded the opportunity to fully argue their positions.

## MOTION TO DISMISS STANDARD

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc*., 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff.

*Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)).  Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)."  *Harper v. Blockbuster Entertainment Corp*., 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

## DISCUSSION

The plaintiff asserts that on or about April 19, 2004, he was injured when he fell from his bunk at the Jefferson County Jail where he was being held as a pretrial detainee.  According to the complaint, the plaintiff informed the guard that he was injured and he was taken to the jail nurse for examination.  The nurse determined that the plaintiff was not injured and did not provide him any medical care.  The plaintiff was placed in isolation because he was unable to climb the stairs back to his cell.  The plaintiff continued to complain about his injuries and was taken to see a visiting physician at the jail about two days later.  The physician stated that the plaintiff's pelvis might be broken and instructed the nurse to observe him closely and prescribed some pain medication.  The plaintiff was forced to walk back to isolation despite severe and excruciating pain.  Over the following weeks, the plaintiff received only cursory medical treatment although he continually sought medical attention and complained of severe pain.

The plaintiff's condition worsened because of his untreated injuries.  While in his weakened state, the plaintiff was sexually assaulted by another inmate.  About five weeks after the plaintiff's injury, a guard realized the plaintiff had not eaten in several days and called his supervisor.  The plaintiff was then transported to Cooper Green Hospital where he was diagnosed

with a shattered hip and blood clots in his lungs and legs. The plaintiff was subsequently transferred to the Trauma Surgery Service at the University of Alabama at Birmingham where he underwent reconstructive hip surgery on or about June 2, 2004. After a two week hospital stay, the plaintiff was transferred back to the jail where he remained for two days before being released.

The plaintiff has undergone numerous surgeries and procedures as a result of being refused medical treatment for his injuries. Furthermore, the plaintiff is permanently restricted to a walker and is limited in his ability to care for himself and his son as a result of his injuries. (Complaint and Amended Complaint at ¶¶ 7-24).

The plaintiff filed the present lawsuit on April 17, 2006. (Complaint at 1). His amended complaint was filed on June 6, 2006. (Doc. 10 at 1).

### Defendant Jefferson County

### Section 1983 Claims

The plaintiff's claims against the County arising under § 1983 are due to be dismissed. In *Turquitt*, the Eleventh Circuit stated as follows:

> We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relate to the daily operation of the jails or to the supervision of inmates. The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail." *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. ALA. CODE §§ 11-14-10, 11-14-13 (1989). In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail. The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989).

> . . . .
>
> . . . . Most importantly, the Alabama Supreme Court ruled that the statutory mandate that the county "maintain a jail" simply meant that the county must "maintain the jail building and its equipment." *Keeton*, 558 So. 2d at 886. Alabama's highest court clarified the sheriff's role in *King v. Colbert County*, which held that a county sheriff operates a jail independently of the county commission. *King v. Colbert County*, 620 So. 2d at 625. This elucidation of Alabama's law explains that while counties have certain responsibilities with respect to county jails, those responsibilities are clearly enumerated in the statute and relate only to maintaining the jail's physical plant and providing operational funding. The sheriffs, on the other hand, have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility. *See* ALABAMA CODE § 14-6-1; *King v. Colbert County*, 620 So. 2d at 625. . . .

*Turquitt*, 137 F.3d at 1289-91.

The plaintiff does not allege any facts in support of a § 1983 claim against the County in the complaint. The plaintiff has offered no legal authority demonstrating that the present allegations against the County are legally sufficient even on a motion to dismiss. The County's motion to dismiss therefore is due to be granted as to this claim.

## State Law Claims

Although the plaintiff asserted at oral argument that he is able to maintain a negligence action against the County under *Newsome v. Lee County*, 431 F. Supp. 2d 1189 (M.D. Ala. 2006), for its failure to keep the jail in a state of repair such that the sexual misconduct perpetrated on the plaintiff could have been prevented, the court finds otherwise. In *Newsome*, Chief Judge Mark Fuller reasoned as follows:

> In Alabama, county governments are liable for an "injury or wrong [if it] was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." Ala. Code § 11-47-90. Although Alabama courts have occasionally found municipalities liable for intentional acts that

> resulted from a material degree of "unskillfulness," *see City of Birmingham v. Thompson*, 404 So. 2d 589, 591 (Ala. 1981), the general rule is that local governments are not liable for the intentional torts of their agents. *Todd v. Kelley*, 783 So. 2d 31, 41-42 (Ala. Civ. App. 2000) (citing *Couch v. City of Sheffield*, 708 So. 2d 144, 154 (Ala. 1998)).
>
> Moreover, Alabama sheriffs and their deputies are not "considered [employees] of the county for the purpose of imposing liability on the county. . . . As a result, counties cannot be held liable for the actions or omissions of the sheriff or his deputies in the operation of a county jail. . . . Any claim against the county must be based on a failure on the part of county officials to provide an adequate physical facility. . . . Each county has "a legal duty to keep the jail in a reasonably safe state of repair" but will not be held liable unless a breach of that duty is the proximate cause of the plaintiff's injury. *King*, 620 So. 2d at 625-26. (Internal citations omitted).
>
> On several occasions in her complaint, Newsome asserts that the facilities at the Lee County Jail contributed to the circumstances that led to her injuries. For instance, she contends that the county failed to "install adequate safeguards in the physical plant of the jail to monitor and supervise corrections officers while they interacted with female inmates."

*Newsome*, 431 F. Supp. 2d at 1207. In the instant case, the plaintiff has failed to plead any allegations with regard to the physical facilities at the jail that would tend to implicate County liability.[2] Without such allegations, the court cannot find that the plaintiff can state a claim against the County. Such a finding would be contrary to the clear statement in ALABAMA CODE § 14-6-1 that "[t]he sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto. . . ." ALA. CODE § 14-6-1; *Turquitt*, 137 F.3d at 1289-91. The motion is, therefore, due to be granted as to these claims.

---

[2]At oral argument, the plaintiff made a statement to the effect that the sexual misconduct perpetrated on the plaintiff may not have occurred had the jail not been overcrowded and properly staffed. No such allegation exists in the complaint.

**Defendants Hale and Costa**

**Official Capacity Claims Under Section 1983**

Defendants Hale and Costa assert that the claims against each of them in their official capacity are precluded by the Eleventh Amendment. (Doc. 13 at 10). In *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), the court held that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity because the suit is in fact an action against the state.[3] Accordingly, the § 1983 official capacity claim against defendant Hale is due to be dismissed. Similarly, Costa is entitled to the same immunity to the extent the § 1983 claim against him is premised on his official capacity. *See Carr v. City of Florence*, 916 F.2d 1521, 1527 (11th Cir. 1990) (extending Eleventh Amendment immunity afforded to a sheriff to a deputy sheriff on the basis that a deputy sheriff is the alter ego of the sheriff). To the extent these defendants' motion seeks dismissal of the claims against them in their official capacities, it is due to be granted.

**Individual Capacity Claims Under Section 1983**

Hale and Costa also assert that the plaintiff's claims against them in their individual capacities are due to be dismissed for two distinct reasons. First, they assert that the plaintiff's amended complaint is insufficient to state a claim against them in their individual capacities because the only reference to them as individuals is in the style of the case. In support of this argument the defendants cite *Marsh v. Butler County*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001), for the proposition that the caption or style of the complaint is not part of the statement of the claim.

---

[3] The Eleventh Circuit Court of Appeals en banc in *Turquitt*, 137 F.3d at 1291, overruled *Parker*'s separate holding that Alabama sheriffs are county policymakers in their daily management of county jails for purposes of § 1983.

In *Marsh*, the Eleventh Circuit noted, in part, as follows:

> The caption to the complaint contains these words: "Diane Harris, Sheriff of Butler County, in her individual and official capacity." But the caption of the complaint is not part of the statement of the claim under Rule 8. The caption is something apart, being mandated by a different rule: Fed. R. Civ. P. 10. The caption is chiefly for the court's administrative convenience. It may, however, sometimes be useful to look at the caption - when the Rule 8 statement of a claim is ambiguous about a party's capacity - to settle pleading ambiguities. *See Hobbs v. E.E. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir. 1993) (using several factors, including caption, to resolve ambiguity of whether official sued in official or individual capacity). To use the Rule 10 caption to create an ambiguity when the statement of the claim is itself not ambiguous is incorrect.

*Marsh*, 268 F.3d at 1023 n.4. Although the plaintiff inserted the word "individually" in the caption of his complaint, the court agrees with the defendants that he failed to plead anything within the body of the complaint that would hold the defendants personally liable. Instead, the plaintiff alleges:

> Defendant MIKE HALE is Sheriff of Jefferson County, Alabama. As such, he is charged with the formulation and implementation of the directives and policies of said Sheriff's office, including the Jefferson County Jail. He has served as such at all times relevant to the events alleged herein.
>
> Defendant PAUL COSTA serves as Chief of Corrections for Jefferson County. As such, he oversees the housing of incarcerated persons awaiting trial or transfer to the State of Alabama Department of Corrections. He also oversees the various services provided by the jail, including on-site medical services. He has served as such at all times relevant to the events alleged herein.

(Amended Complaint at ¶¶ 5, 6). Therefore, the only allegations in the complaint amount to claims against these defendants in their official capacities as Sheriff and Chief Deputy. The motion is, therefore, due to be granted.

The defendants next argue that the plaintiff's amended complaint is time-barred. (Doc. 13 at p. 7). Specifically, these defendants assert that the plaintiff's injuries occurred on or about

8

April 19, 2004, and the amended complaint was not filed until June 6, 2006, close to two months after the statute of limitations had expired. The defendants assert further that the amendment does not relate back to the filing of the original complaint. The defendants are correct in their assertions.

> FEDERAL RULE OF CIVIL PROCEDURE 15(c) provides:
>
> An amendment of a pleading relates back to the date of the original pleading when
>
> > (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> >
> > (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> >
> > (3) the amendment changes the party or naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED. R. CIV. P. 15(c). Clearly, the plaintiff was not mistaken about the identities of Hale and Costa as he named them in the original complaint but neglected to name them in their individual capacities.

This issue was directly addressed by the court in *Sims v. Montgomery County Commission*, 873 F. Supp. 585 (M.D. Ala. 1994). Specifically, the court stated:

> Rule 15(c)(3) permits a plaintiff to amend the original pleading to add an additional defendant if the defendant has received notice of the lawsuit so that the defendant will not be prejudiced in maintaining a defense on the merits, and the defendant knew or should have known that, but for a "mistake" concerning the identity of the proper party, the defendant would have been sued. The critical question here is whether the . . . intervenors were mistaken about the identity of

> Butler and Huggins as proper parties or whether they were simply negligent by not including Butler and Huggins in their original complaint-in-intervention. As the Ninth Circuit Court of Appeals has held, "Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party." *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857 (9th Cir.) (emphasis added), *cert. denied*, 480 U.S. 934, 107 S. Ct. 1575, 94 L. Ed. 2d 766 (1987). "Rule 15(c) was never intended," the court continued, "to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." *Id.* at 857-58.
>
> The . . . intervenors did not misdescribe the proper defendants nor were they mistaken about the identity of the proper defendants. Instead, at all times before and after their claim against Butler and Huggins accrued, they knew the identity of these defendants but simply failed to name them in their individual capacities in their original complaint-in-intervention. The . . . intervenors' amendment to their complaint-in-intervention, even if allowed, would not relate back within the meaning of Rule 15(c)(3). [ ]

*Sims*, 873 F. Supp at 611-12 (footnote omitted). The court finds that the failure to name these defendants in their individual capacities within the statute of limitations is also a fatal flaw in this instance.

Additionally, the court notes in passing that the individual capacity claims against Hale and Costa would be due to be dismissed even absent these procedural defaults. "Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lancaster v. Monroe County*, 116 F.3d 1419, 1424 (11th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). The Eleventh Circuit, addressing the applicable considerations in the qualified immunity context following the United States Supreme Court ruling in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), has stated:

>    The Officer Defendants are entitled to qualified immunity for their acts unless they--given the circumstances--violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hope*, 122 S. Ct. at 2515 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  The Supreme Court has said that an official is entitled to "notice [his] conduct is unlawful," *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001))(emphasis added), and to "'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* (emphasis added).  This notice or fair warning flows from the applicable law's being "clearly established" at the time of the official's alleged unlawful conduct.
>
>    "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987))(emphasis added).  The unlawfulness must have been apparent.  *Id.*  In many--if not most--instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on "fair notice" that the behavior violated a constitutional right.
>
>    The Supreme Court in the *Hope* opinion stresses that preexisting caselaw with "materially similar" or "fundamentally similar" facts is not always necessary to give an official "fair warning" of unlawful behavior.  *Id.* at 2516.  "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  *Id.*  General statements of the law contained within the Constitution, statute, or caselaw may sometimes provide "fair warning" of unlawful conduct:
>
>>    [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.
>
> *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 117 S. Ct. 1219, 1227, 137 L. Ed. 2d 432 (1997)) (alteration in original) (internal quotation marks and citation omitted).[ ]  Officials sometimes can still receive "notice that their conduct violates established law even in novel factual circumstances."  *Id.*

*Willingham v. Loughnan*, 321 F.3d 1299, 1301-02 (11th Cir. 2003) (footnote omitted).

> The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The *Harlow* case firmly established this doctrine of qualified immunity which, when properly invoked, protects government actors in their individual capacities from federal civil damage claims. *See id.*; *see also Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996); *Lassiter v. Alabama A & M University, Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).[ ] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). Qualified immunity is an affirmative defense that must be pled by a defendant. *See Harlow*, 457 U.S. at 815. The availability of qualified immunity is a question of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816-17, 86 L. Ed. 2d 411 (1985).
>
> Defendants have asserted a qualified immunity defense in this case. To be eligible for qualified immunity, a defendant must first demonstrate that he was a public official acting within the scope of his discretionary authority. *See Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988). The Supreme Court has said that an action is discretionary rather than "ministerial" when the action at issue was "influence [d] by the decisionmaker's experiences, values, and emotions." *Harlow*, 457 U.S. at 816. Ministerial actions are those acts that do not require the exercise of independent thought or deliberation by the person taking the action. *See Kitchen v. CSX Transp., Inc.*, 6 F.3d 727, 732 (11th Cir. 1993). The Eleventh Circuit has gone further by providing a concrete standard for determining whether an action is discretionary for purposes of applying the doctrine of qualified immunity. Qualified immunity is available to a government official--even if his actions appear to be ministerial in nature--so long as the official's actions "'(1) were undertaken pursuant to the performance of his duties,' and '(2) were within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich*, 841 F.2d at 1564 (11th Cir. 1988)). If the conduct at issue falls within this definition, then it is established that the official was acting within the scope of his discretionary authority. *See McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

*Vinson v. Clarke County, Ala.*, 10 F. Supp. 2d 1282, 1296-97 (S.D. Ala. 1998).

In the instant case, the plaintiff alleges that the defendants were deliberately indifferent to his medical needs. The law is clear that a jail official "violates a pre-trial detainee's Fourteenth

Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." *Lancaster*, 116 F.3d at 1419.  However, the plaintiff has failed to plead adequately that the named defendants knew he had a serious medical need.  Instead, the plaintiff alleges that he was taken to the jail nurse who said he was not injured and was later taken to a visiting physician who said his pelvis was "possibly broken" and instructed the jail nurse to observe him.  There is simply no allegation that the individual defendants knew of the plaintiff's medical condition.  Therefore, the plaintiff has failed to plead that these individual defendants were deliberately indifferent to his medical needs.  To the contrary, the complaint does not allege that Hale or Costa participated in any activity concerning the plaintiff or that they were even aware of the plaintiff's injuries or situation.  The Eleventh Circuit has stated:

> Despite the lenience of the Federal Rules of Civil Procedure, it is axiomatic that defendants remain entitled to know exactly what claims are being brought against them.  *See* FED. R. CIV. P. 8 & 10.  Where the specter of frivolous or retaliatory litigation is high, courts sometimes impose heightened pleading requirements to ensure that potential defendants are not deterred from engaging in socially beneficial activity.  Such is the case with § 1983.  As Defendants point out, the Eleventh Circuit requires § 1983 plaintiffs to fulfill a higher standard of specificity in their complaints.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)); *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary . . . in cases involving qualified immunity, where [the Court] must determine whether a defendant's actions violated a clearly established right.").

*Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1250-51 (11th Cir. 2003).

The court does not find that the complaint meets the requirements in a § 1983 case.  The complaint simply does not assert that Hale and Costa were "deliberately indifferent" to the plaintiff's medical needs.  The claims are due to be dismissed as to these defendants.

**State Law Individual Capacity Claims and Sovereign Immunity**

For the reasons set out previously, the court has already determined that the plaintiff has failed to state a claim against Hale and Costa in their individual capacities. However, even if the plaintiff had sufficiently pled allegations against them individually, the state law claims would also be due to be dismissed.

The Eleventh Circuit has held that individual capacity claims against an Alabama sheriff for money damages are barred by the doctrine of sovereign immunity, even when the claims involve malicious or intentional wrongdoing. *McMillian v. Johnson*, 101 F.3d 1363, 1364-65 (11th Cir. 1996) (citing *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996)) ("the holding [of which] is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity"). Similarly, deputy sheriffs are also immune from suits in their official and individual capacities for state law torts. *Alexander v. Hatfield*, 652 So. 2d 1142 (Ala. 1994). *Accord Ex parte Haralson*, 871 So. 2d 802, 805 (Ala. 2003) ("A deputy sheriff acting in his 'official capacit[y] and individually' is immune from suit when the action is one against the State."). Because jailers are deemed to be the alter ego of the sheriff, they also are entitled to assert the sovereign immunity defense. *Lancaster*, 116 F.3d at 1431.

Although "sovereign immunity does not protect State officers and employees under circumstances where a plaintiff alleges that they acted 'willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law,' there is no allegation of such conduct in the present complaint." *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1320-21 (M.D. Ala. 2000), *quoting Ex parte Alabama Dep't. of Transp.*, 764 So. 2d

1263, 1268 (Ala. 2000) (citing *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989)).[4]  Thus, the state law claims are due to be dismissed as to these defendants.

## CONCLUSION

For the reasons stated above, the court finds that the defendants' motion to dismiss (doc. 8) and amended motion to dismiss (doc. 12) are due to be granted.  The entirety of the plaintiff's complaint is due to be dismissed with prejudice.

**DONE**, this 4th day of August, 2006.

_____
**JOHN E. OTT**
United States Magistrate Judge

---

[4] None of the other exceptions listed in *Parker* apply because the plaintiffs are seeking monetary damages, not an injunction, mandamus, or a declaratory judgment.  *See Vinson*, 10 F. Supp. 2d at 1305.